May it please the Court, I'm happy to be here this morning to argue on behalf of my client for 12 years, Jerry Stanley, who, 27 years ago, underwent a month-long competency trial to determine his ability to withstand the penalty trial. It's a given that that trial was unconstitutional. Experts for both parties below swore under oath that it is impossible now, almost three decades later, to determine what his competence was at that time. This case is about the district court's decision to remand the case to state court and whether that decision itself was flawed. It was, and I intend to argue that for three reasons. First, the district court's decision to have the state court determine whether a retrospective competency determination is feasible is contrary to the law and to the facts. Second, the district court's decision not to adjudicate other claims in the case and enter partial judgment under Rule 54B spoils the already flawed remedy. And third, the remedy ignores that a substantial doubt as to competency existed prior to the actual competency trial during the guilt phase when a doubt should have been declared at that time. So, to begin with the feasibility question, that presents two main issues. What about this court's decision in Odell v. Woodford, and what about the existence of the trial court record of the competency trial that was had? First, the Odell issue. The court, I'm sure, has in mind what's wrong with the district court's decision that it was claiming to simply do exactly what this court did in Odell. And that raises two subparts. What exactly does Odell tell us about feasibility and how you determine it? And what does Odell tell us about who is supposed to determine that? Taking the second question first, the district court says that Odell creates basically a de facto preference that the state courts are the ones who figure out the feasibility question. That's dead wrong. Not only did Odell not create some sort of preference about that, that's not even what Odell did. The remand order from this court in Odell is to the state court to hold a retrospective competency determination. This business about conferring discretion to the state court to figure it out comes simply from a footnote that Judge Kaczynski dropped. Counsel, how do you explain the language in our in-bank opinion in the DiCaplini v. Animoto? And I'm looking specifically at page 986 of 540 Fed Second, where we affirmed the retroactive determination of competency that was made in that case by the district court, but then said, in expressing this view, I'm quoting now, we do not intend to suggest that where a retroactive determination is possible, a remand to the state court for such a determination is not usually a proper form of relief. I don't read that language to say it's prohibited. It just says it's unusual. I'm familiar with that language, Your Honor. There is an ambiguity in the antecedent there on the end, but the way I read that, they're saying we're not, in that case, the federal district court held essentially the feasibility hearing, and that ended it because of the, I'm sorry, not the feasibility hearing, the retrospective competency. It made the determination that in this case has been remanded to the state superior court to make. But no, Your Honor, here's the difference. De Capline is not talking about letting the state court figure out whether it's feasible. De Capline is talking about having the determination. We don't necessarily object to that, although we have reasons that we believe the district court just should have said it's not feasible. But our main objection that I'm talking about right now is saying basically when in doubt, let the state court figure out whether it's feasible. My question to you is I don't read the two cases inconsistently. I agree with you. The language that I just quoted to you is not very artfully written, but it certainly cannot be read to say that there's a prohibition on doing what Judge Damrell did. Well, and under the facts of this case, which I'm happy to turn to now, Your Honor, or get to in due course, we think there are very specific reasons why this case is different. That's partly the 54B issue. But that's an abuse of discretion standard that you're about to argue, is it not? Yes, and I think it clearly is an abuse of discretion. Maybe you should get to the facts. Why was it an abuse of discretion for Judge Damrell to order the remand in this case? Well, there's several, Your Honor, and that essentially comes to the point I said I was going to make about the state court trial record. Essentially, Damrell says I have a lot of doubt whether it's feasible in this case, and that's one of the principal reasons because Odall and all the other cases say before you get to a remand, the district court has to determine that it's reasonably likely someone can make a determination. But we've got 3,500 pages of trial transcript. We've got 12 1⁄2 hours of videotaped interviews between Dr. Axelrad and your client. We have testimony that was contemporaneous from all of the percipient witnesses to your client's competency during all of these proceedings. How is that an abuse of discretion? That's all true, Your Honor. The state courts can look at that record and decide whether or not it's possible to redetermine the issue. The finding by Judge Hollows, which was adopted by Judge Damrell, was notwithstanding all that, it's likely not feasible to hold a retrospective hearing. Rather than it is feasible, he says it's likely not. But more importantly, the experts for both sides in this litigation had all those records, looked at them and said, in light of Mr. Stanley's particular problems, we cannot and no one could make a reliable determination about his mental state at the time of the trial. I understand that 27 years later, that's what the experts are saying when they were asked whether or not they could render an opinion. But the question, it seems to me, is on the voluminous record that was adduced during a month-long competency trial, why is this any different from any other remand that we order when a case has to be retried? Why can't the judges of the Superior Court of whatever county is going to try to compute, or Lake, or I mean Mendocino-Pickett County, why can't we just impanel a new Superior Court jury and represent the same evidence to them? Well, it's hugely different, Your Honor, and here's why. We have about 50 pages in our habeas petition, claims 1A, 1C, D, and E, that all go to the reliability, the constitutionality, and the accuracy of that record. There's a pervasive claim of ineffective assistance of counsel against the lawyers who created that record. But let's suppose that we disagree with you and we affirm the district court's determination that there was no ineffective assistance of counsel here because there wasn't a substantial doubt raised. You still haven't answered my question as to why that record is not sufficient to retry the issue of competency. I'm sorry that I'm not making myself clear, Your Honor. The claim that the district court adjudicated was the claim of ineffective assistance of counsel at the guilt phase. I understand that, and my hypothetical to you was I reject that premise, and now my question is without regard to your challenge to the weight or the credibility or the reliability of the evidence, what's missing from that voluminous record from which a new jury and panel would be unable to render a determination as to whether it was competent? Just to be clear, Your Honor, the district court did not adjudicate our claim that the way the lawyers handled the competency phase was ineffective. It said I don't need to address that because I'm throwing out the verdict anyway. And now what's being proposed is take that record that we claim was based on ineffectiveness and many other problems as well. Mr. Stanley, who was presumed to be incompetent at that point, was allowed to waive attorney-client privilege. There was an appointment of a separate defense attorney to argue against the actual defense attorney, turning into what we've been calling a three-ring circuit. You know, time is running, and I want to make sure we save enough time to address other issues in the case, but I want to pursue this one for just one more moment. I understand what you, I know what you don't like. That is to say, you don't like, you object to the fact that Judge Damrell said the state judge, the state court should determine first whether it is possible to have a retrospective competency determination with respect to the penalty phase. Correct, Your Honor. And then if the court determines that it's possible, then to conduct it. I understand you don't like that. What do you want instead? I would like this court to find that as a matter of law, a retrospective determination is not feasible, number one. You just say you want us to tell Judge Damrell that he should have done that? Or that he should have made that determination? Yes. In essence, by an opinion, this court concludes it's not feasible. Oh, gee, that's, I mean, I've read an awful lot of things in this case, and I'm certainly willing to read an awful lot more, but it doesn't strike me that we are in a proper position to make that determination, but it's to say it's going to be made by a federal court. I think it has to be made as an initial matter by Judge Damrell. Very well, Your Honor, and then that would be, if we're talking about a remand, one of the things about the remand should be figure out what the state of that record that you're proposing to ship off to state court and let them decide. Okay, so the centerpiece is what you want is a federal court to determine whether it's possible to have a retrospective competence determination. You'd prefer that we would do it if we would decide in your favor, obviously, but you might settle for Judge Damrell doing it. Yes, Your Honor, I might settle. But I don't see that our case law compels that. It seems to me that our case law permits the district judge to send it back to the state court to make that determination. And I don't mean to keep repeating myself, Your Honor, but I think what's different here is he can't send it off to state court with a bunch of ticking time bombs in the record, say, do your best, read this record to a new jury, which is one of the things that's been proposed. Somebody's got to figure out if it's feasible to do it that way. Well, I assume that a Superior Court judge would say part of my job is to figure out whether it's feasible or fair to do it that way. Quite possibly, Your Honor, and then although we don't know what the view of the Superior Court is going to be about that since it's been sent to them with Judge Hollows and Judge Damrell saying, here's the record, see if that record is something you can make a determination. Well, I'm not sure that's quite what they said, was look at this record and see whether you can do it. I think it was a more open-ended, determine whether it is possible to have a fair retrospective determination at this time. And I'm sure, as the Court's aware, both parties objected to this, saying it's completely unfair to the state courts to have them do a dry run of the hearing and then have it come back to federal court and say, you know what, maybe you shouldn't have considered that state court record because of the ineffectiveness, so we're going to pull the rug out from under you for having done that. The state, I don't think I could say it any better than the way the state said it below. If the Court is going to set a presumptively valid and final state criminal judgment, it should do so as clearly and completely as possible. It should not force the state court to attempt to remedy a constitutional violation with a procedure that may itself be unconstitutional. Habeas corpus is designed to correct constitutional errors, not to create them. Counsel, what's the end game here? What is it that you want? You want Judge Damrell to declare that you can't do this retrospectively and to conduct a new penalty phase hearing? Is that what we're doing? I'm a little uncomfortable with the term end game, Your Honor, but I understand the question. We think that's the right result, and it solves a lot of problems for both courts because currently we have sort of a chicken-and-the-egg state and federal court problem. The state court— You would propose then convening a new jury to hear evidence related to the penalty. Correct. The state court can allow a new jury to decide whether or not to impose the death penalty. Correct, and that's leaving aside our issue about the guilt phase because obviously we're trying to argue that as well, so it may be an entire new trial. So a federal jury is going to decide? No, no, I'm sorry. I misunderstood your answer. I'm sorry. Perhaps I misunderstood the question. It was a new jury in state court would hear the penalty trial. The sort of traditional favored remedy after an incompetency problem. You vacate the underlying trial, and you have a new trial on the underlying offense. But what's wrong—let's spin this out a bit. What's wrong with remanding it, and suppose the state court decides, yes, we can make a retrospective determination, and I'm going to impanel a new jury, and we're going to retry this month-long case, and at the end of the month-long trial, the jury says he was competent. And then Judge Hollows picks up the state claims on the 54B judgment and says, now I'm going to look at that old death judgment, and I may throw it out anyway. Well, that's not what he intimated. He intimates at the end of his order that he doesn't think that they have much merit to him, so I can't see anything, to use Judge Bybee's term, an endgame in which a state jury, a new jury, decides he's competent. The judgment is reinstated. It comes back to the federal court. The federal court denies the remaining habeas claims, and all habeas relief is denied. Well, he said, I don't think I see much merit there, which is actually what he initially said about the claim we won on. If he was that sure about it, he should have just adjudicated it, but I've been in front of Judge Hollows for a long time. He is a fair judge, and he changes his mind sometimes. Let me ask you this. I took it to be your position, and maybe the state's position as well, that if the state court concludes that it's not possible at this time to conduct a retrospective competency determination, the default is then that he is incompetent and that the penalty phase trial is set to one side, with the default result being that we have life in prison without possibility of parole. Isn't that right? Or am I misunderstanding? I would be happy to find that in the record, Your Honor. My understanding of where we are is if the trial court in Butte County or Lake County, wherever, decides that it's not feasible, then they get to have a new penalty trial. Not that the default goes to life without possibility of parole. They get to have a new penalty trial because we now are able to assume that he was competent, even though there was a trial as to whether he was competent. We now set aside that result, and it's not possible to decide whether he was competent. That's going to be the answer. The answer would be, is he competent now to withstand a retrial. I see. But we may then have to have a new competency hearing with respect to whether he is competent now. I imagine that's probably going to happen either way, Your Honor. Mr. Stanley has been writing Butte County, saying he thinks he's incompetent to go through these proceedings. His lawyer, Dennis Hoftowit, has broached the subject with the court that there may be a competency proceeding to determine. I mean, we've got some findings in the record from Magistrate Hollows that this has been a persistent pattern that goes clear back to the statement that he made to his first wife that he was going to feign mental illness as a means of defeating the prosecution against him. At some point, I suppose, a court could say, enough of this game playing. We've heard the last of your claims that today I'm competent, tomorrow I'm not, today I am, tomorrow I'm not, and we're going forward. That certainly could happen, Your Honor. And the question before the court is going to be, is there a bona fide doubt about his competency to proceed? And certainly, looking at the history and some of the erratic manipulative behaviors that are before the court, it's something they're obviously going to look at. Sure. But if it comes down to there's still a bona fide doubt, then they're off and running as to competency. I assume, then, that if we are going to have another full-fledged penalty trial, that the first thing out of the box is going to be a trial as to competency. I would imagine, Your Honor. Let me ask you this, because to me, this is actually what I'm about to talk about is the harder issue in the case, and that is whether there was IAC at the guilt phase in failing to suggest to the district, to the trial court, Superior Court, that there be a 1368 hearing. Would you want to address that? Certainly, Your Honor. To keep it perhaps brief, depending upon the follow-up questions from the court, I had in mind three points to address. The contention that the trial attorneys, and perhaps it's time to use their names, Mr. Neal and Mr. Peterson, Neal being the lead counsel and Peterson being second counsel, believed him to be competent, so therefore it's not ineffective to bring a motion that you don't believe in. Second, that Dr. Axelrod, their expert consultant, believed Mr. Stanley to be competent and told the lawyers that, and they were entitled to rely on that. And third, the strategic consideration regarding Mr. Stanley's desire not to be found incompetent. He had pride in all the wrong places, as Mr. Peterson testified. So, not deficient because they weren't doubting Mr. Stanley's competence. When you said Mr. Peterson testified, was that at the hearing before Judge Hollows? Yes, that particular phrase is from that. Didn't Judge Hollows make an adverse credibility finding? Not on that, Your Honor. He accepted that statement as the reason that they didn't bring a competency determination at the time of trial. But that particular phrase comes from the federal evidentiary hearing. The overall record everywhere is consistent with that, that they were very concerned that Mr. Stanley objected to being labeled mentally. Mr. Stanley wrote letters about this. He tried to stop Dr. Axelrod from testing fine to that effect at the penalty phase. So, with regard to whether they were doubting or not, the record of the trial court, what they said to the trial judge on one occasion, they said, three times prior to today, we've almost declared a doubt as to his competency. Another time they say, now we're up to six times where we've almost declared a doubt. I think only a lawyer could say they're not doubting if they say six times they've had enough doubt that they've almost declared a doubt formally. In each of those times, wasn't there a contemporaneous factual finding by either Judge Patton or Judge Maroney, whoever it was they were making those statements, probably Judge Patton, that he had no substantial doubt as to Mr. Stanley's competency? I believe it's one time, Your Honor, and it's the second time they raised this in 1980. It's regarding medication, that Mr. Stanley's been going off the deep end, if you will, because he hasn't been getting his Valium, and they bring the jailers in to talk about Valium, and they have a hearing. And at that point, Mr. Neal says, for reasons I think only an ineffective attorney could say, this doesn't concern us about his competency. It's just a medication problem. And Judge Patton, I think you're right, Your Honor, says, yes, I don't see a competency problem, but that's the only time that I'm aware of, Your Honor. Well, I'm sure Mr. Wood will help me out on this, but I know that I have read multiple findings by both state and federal judges that they didn't have doubt as to it. So there were the six times he's almost declared a doubt, and the judge says, well, I don't have a doubt. But that's significant under the case law, is it not? I mean, it's one thing for the lawyer to say it, and we obviously have to factor that in, but another consideration under the case law, I mean, Judge Patton spent 129 days in proceedings with Mr. Stanley, had in-camera hearings on more than 25 occasions. So when a judge who has had that much contact with a defendant says, I don't have a substantial doubt as to his competency, under EDSA we've got to give substantial deference to that factual fact. I agree, unless it's objectively unreasonable, Your Honor. And now, I'm sorry, that is deference, but it's deference that's overcome. You have to show clear and convincing evidence that it's not erroneous. Judge Fletcher was asking me about the ineffectiveness claim. Yes, I'm not asking you about whether the Superior Court judge should correspond to it. I'm asking about IAC. Yes, so we sort of drifted off, and it's understandable. They're very intimately related. So getting back to the lawyers didn't have a doubt, under Strickland, the question isn't whether these particular lawyers had a doubt. No, it may very well be the fact that they didn't have a doubt is evidence of their incompetency. What evidence do we have that suggests that they should have had such a doubt that they should have requested a 1368 hearing? I mean, obviously, they had some doubt. They're talking about an open court. What evidence is it that the doubt was so strong or the evidence was so strong that they should have had such a reason to think he was incompetent that they should have brought it to the attention of the judge? What we know about the lawyers is they were doing everything they could do to avoid declaring a doubt. They were essentially handling the 1368, as it's called in California, extrajudicially with a bunch of stopgap measures. So they were having Dr. Axelrod give Mr. Stanley therapy and post-hypnotic suggestion. They were arguing with the jail over the medication. When Dr. Axelrod said, Mr. Stanley's incompetent, they had him sent to Vacaville rather than going to the court. Basically, the tail was wagging the dog on this whole situation. Rather than following PAPE, a system that's designed to jealously guard the defendant's right not to be tried while incompetent, the lawyers were viewing it completely the wrong way. And they were... But you mentioned Vacaville. I mean, that's the closest thing you've got to a period of incompetency, but it lasts for only a few days. And you have Dr. Axelrod and the psychiatrist at Vacaville saying this guy's competent. Dr. Axelrod doesn't say he's competent during the 1368 trial that was had. He's asked on cross-examinations, did you ever tell the defense team that you thought Mr. Stanley was not competent to stand trial? And he says, oh, yes. And then he goes through several examples. The Vacaville is only one of them. And there were other cases... Was there ever a credibility finding made as to Dr. Axelrod by Judge Hollows? Judge Hollows says his current opinion at the federal evidentiary hearing that he essentially always thought that Stanley was incompetent is contradicted by the record. And that's not true. The contemporaneous record has Dr. Axelrod saying, oh, yes, I thought he was incompetent. And what Judge Hollows is relying on and misconstruing is Dr. Axelrod's contemporaneous testimony that I always thought his competency was marginal and had to be monitored very carefully. And I told the lawyers, you need to go to the court with your doubts. And part of the problem isn't they were listening to Dr. Axelrod about the alleged competency. The problem is they weren't listening to him about advising them to take this to the court and stop the stopgap measures. He does say at one point, to be fair to Judge Hollows, I told them that I thought I could probably come out for competence. But in context, that was what might happen if they had a 1368 because he tells them this has, what I'm saying now, has no legal significance. It's just an opinion. And all that can possibly mean in that context is you need to do the 1368 because there's a reasonable doubt about this. And then we'll figure out exactly what. What do we do with the testimony at the penalty phase competency hearing from Dr. Axelrod and I believe from Neal that he is incompetent now, but I think fairly red, was competent during the guilt phase? Well, they are certainly trying to puff up the change and explain to the jury why they're doing it now and giving the jury a reason to understand. But Dr. Axelrod had not seen Mr. Stanley at all during the guilt phase. He stopped seeing Mr. Stanley before the guilt phase started. They were having the problems with it, Mr. Stanley. There's parts in the record where Mr. Peterson exasperated, tells the judge we're having a complete breakdown here at the defense table because of what Mr. Stanley is doing. When they finally do bring Dr. Axelrod back in, he says it's time to do the 1368. If they had brought Dr. Axelrod in prior to that, there's every reason to believe he would have said that at the same time. The record is just sort of silent on, well, he hadn't seen him, therefore he must have. It's not silent. If we've got Dr. Axelrod appearing at the competency hearing during the penalty phase and stating that he doesn't think that he was incompetent during the guilt phase, and we've got his attorneys saying they don't think that he was incompetent during the guilt phase, what else are we supposed to do? Well, Dr. Axelrod, again, hadn't seen him during the guilt phase. Well, that suggests that Dr. Axelrod was maybe not being entirely truthful with the court. I don't… That sounds like a reason not to believe Dr. Axelrod. I don't have the testimony. But if you take Dr. Axelrod's testimony out of it, then you really don't have anything at all. The lawyers did say they thought Mr. Stanley first became incompetent. That's because they didn't know what they were talking about with competency. They were so worn down dealing with Mr. Stanley, and lots of us understand that feeling. Yeah, we even feel it. It's just removed. They were setting the bar too low. They had completely given up on rational assistance. Their one goal was could they figure out some way to stop him from blowing up what they were trying to do on a day-by-day basis? They had other mental health professionals evaluate him earlier, had they not? When they were investigating the NGI defense, I mean, they had some forensics. I believe Your Honor may be referring – well, Dr. Axelrod had part of a team that he worked with. Yeah, there was a Dr. Nicholson who looked for organic damage. I mean, this is not a… Right, but these weren't separate, independent evaluations. This was – Dr. Axelrod was at UC Davis at the clinic, and they had this multidisciplinary evaluation team, and he was getting things from Dr. Morris. Let me make my question a little more clear. As I understood at the outset prior to trial, there was an effort made by the defense team to investigate an insanity defense, not guilty by reason of insanity, which necessitated mental health evaluations by others besides Dr. Axelrod. And as a result of the findings of the defense mental health experts, the advice was given, we don't think we've got an insanity defense here, and it was abandoned. It was abandoned. I'm not sure that's why, and Your Honor, Mr. Witt can correct me if you're looking at the relevant documents. I think that was part of Mr. Stanley doesn't want to be labeled mentally ill. Well, part of the problem is Mr. Stanley didn't want to admit that he'd murdered anybody, and you cannot pursue a not guilty by reason of insanity without admitting that you engaged in the act for which you are raising the defense. Well, that certainly is a problem every defense lawyer has, Your Honor. But if that's the reason they said we can't give you NCI, that would have nothing to do with counseling. It's coupled with the fact that there is no organic or evaluative testimony from mental health professionals to support an insanity defense. And that's part of the ineffectiveness because when we put on the federal evidentiary hearing, we did submit evidence of organic problems and genetic problems. Don't worry about that. I watched you glancing over. You are already over time. We're asking questions and we're going to talk as long as we need to talk. Thank you, Judge. I'll let you talk as long as you need to talk, so don't be concerned about this. What do we do with Dr. Wood's testimony in front of Judge Hollows? If any place where we would get testimony that says, from an expert, that says, Dr. Axelrod was wrong when he testified at the penalty phase competency hearing, the judgment of Neal and Peterson was wrong during the guilt phase. As I look at this man, there was evidence in the record that tells me he was incompetent during the guilt phase. Dr. Woods doesn't quite say that. So what do I do with that? He ends up agreeing with Dr. Ruth that it's a contemporaneous evaluation, especially with somebody like Mr. Stanley with his particular problems that are highly variable, situational, unlike Mr. Odell, say, for instance, who had a temporal lobectomy. That's pretty static, what that does. All Dr. Woods is able to say is it looks to me like there's enough to have been a substantial doubt, but I can't say, in fact, that at any particular time he was incompetent because I wasn't there, and that's the same thing the state's expert says, Dr. Woods. So there is a little bit of a catch-22 here. Dr. Axelrod was not the only one who had testified at that hearing. Those are not the only records that Dr. Woods would have been reviewing. We had two other psychiatrists or psychologists, right? Correct. Dr. French and Dr. Whipple. Correct. And they both agreed that he was competent. Correct. So we don't seem to have any divergence among three medical experts who testify in the 1983 proceeding. Well, no, Dr. Axelrod did testify he was incompetent. But for the guilt phase. I'm sorry, for the penalty phase. Correct, because that's when they declared a doubt. That's when Whipple and French were appointed to evaluate him. That's what Dr. Axelrod was testifying about because Dr. Axelrod hadn't seen him during the guilt phase. But, of course, he'd seen him for extended periods previously. That's correct. And many times he said, there's a real problem here. You've got to monitor this, and during the time I'm not seeing him, if you're starting to have a doubt, go to the judge with it, and they didn't do that. Why don't we hear from the State, and we'll then make sure you get enough chance to respond. Thank you. Thank you, Your Honor. Jesse Witt, Deputy Attorney General on behalf of the Appellee's Award. Thank you. To pick up some quick things before I forget, Dr. Woods did issue an opinion on incompetency. He said he could not give an opinion during the guilt phase, but he definitely said that Mr. Stanley was incompetent during the penalty phase. So I think Mr. Schlesinger may be wrong in his recollection of that. I would like to clear up a misunderstanding to Mr. Schlesinger that the expert did testify. We cannot do a contemporaneous assessment of him and say that he was incompetent 27 years ago. They cannot give an expert opinion based on looking at him today, saying 27 years ago. That would be true of anyone. We can look at myself and say, well, he'd be competent to look at him today and say he was incompetent 27 years ago. What the expert did not say is that a jury did not look at all the evidence in the case to make a determination of someone's mental state. That's what juries do every day where mental state is involved. If a case was sent back for a retrial in the guilt phase, they would have to make a determination in Mr. Stanley's act of premeditation deliberation. They would look at the evidence. They would hear what the witnesses said. They would make that determination. This case is extraordinary in the amount of information a jury looked at then and can look at now. Dr. Apsarod on day seven of the evidentiary hearing in front of Justice Howells on page 136 said, another psychiatrist could look at the case I made and inform an opinion about Mr. Stanley. That was in the context of why they were making the case. They were going to have a team approach, and they had anticipated having a fourth psychiatrist involved too, and that fourth psychiatrist's role would be to look at what Dr. Apsarod was doing to give an opinion. To say now that a latter-day expert cannot look at, or a jury cannot look at what Dr. Apsarod interacted with Mr. Stanley and form an opinion regarding Mr. Stanley is not correct. We do have a plethora of medical experts who have looked at Mr. Stanley back then at the time of trial when the relevant period of time wasn't competent during the penalty phase, which is extraordinary in the incompetence phase where the defense attorney, Mr. Neal, and this is an unusual trial in the fact that it's a death penalty case. So the attorney is not with him for 30 days before trial, maybe have a two- or three-day trial. Mr. Neal is with him over an extended period of time. Mr. Neal can form an impression, and then we have Mr. Neal testifying on direct, trying to argue why he is incompetent at the penalty phase, and being cross-examined by the prosecutor about his impressions, his observations, his opinions during the guilt phase, which is the relevant phase for this hearing. I think that is very unusual to have that much information regarding individuals. And then Dr. Apsarod not only interviewed Mr. Stanley once or twice, 27 times at least, 17 times during the guilt phase. When you say during the guilt phase, I'm not sure we're specific as to the timing because we were just hearing that Dr. Apsarod didn't deal with Mr. Stanley during trial. Well, guilt phase is a long period, so can you be a little more precise as to... Absolutely, Your Honor, and that is a critical point here because there are various significant time differences. There is a lengthy pretrial, as there is in any capital case, where you have the proceedings and the motions to suppress. And Dr. Apsarod was initially hired by Mr. Neal and Mr. Peterson to examine Mr. Stanley for three bases. The first was competency. They hired him to specifically determine whether Mr. Stanley was competent. Another one, whether it was feasible to have a non-guilty bargain for insanity. And a third one was to investigate whether it was possible to have a diminished capacity. Those are the guilt phase evidence. And Dr. Apsarod interviewed Mr. Stanley twice, and then Mr. Peterson said, is he incompetent? And Dr. Apsarod said, no, he's competent. And then he continued to interview him throughout that phase, leading up to July of, I think, 1983. I may be correct. It's a July date because a reason Dr. Apsarod's approach is because he had previously dealt with Mr. Peterson in a case where narcotic hypnosis was used to acquit a defendant. And they thought maybe this would help in Mr. Stanley's case, where Mr. Stanley is denying that he was the killer. Maybe this could bring back a memory, try to record something that would help him in the defense. So Dr. Apsarod is bonding with Mr. Stanley over this period of time. Mr. Stanley's enjoying the attention. The attorneys are happy because Mr. Stanley seems to be relieved when he's talking to Dr. Apsarod. So what may have only needed three or four meetings turned out to be this extensive meeting. All this time, Dr. Apsarod is observing Mr. Stanley. He's not coming back to the attorney and saying Mr. Stanley is incompetent. But it goes to the July thing, and then they try the narcotic hypnosis. It doesn't give them the result they were hoping for. Mr. Stanley does not have any recollections of being the killer. Well, he says he doesn't. Yeah. The diminished capacity defense says it's no longer viable. The attorneys, after consulting with Dr. Apsarod, make the decision we're not going to use Dr. Apsarod during the guilt phase. Now, previous to that, during the motions to the press, there was effort going to be made to have Dr. Apsarod testify that Mr. Stanley couldn't. The statement could not voluntarily because of some mental disability. And then it went back and forth. Dr. Apsarod was going to testify. Mr. Stanley did not want to be labeled defective. He has consistently rejected that. And then they said, well, do we want to use this now? Then it turned out if they were going to use Dr. Apsarod at that preliminary motion, they would have to turn over to the prosecution Dr. Apsarod's conversations with Mr. Stanley. Let me take a slightly different tact, but it's as to the same question. That is to say, was it IAC not to raise incompetency during the guilt phase? Okay. Incompetency is an odd concept because it's somewhat distinct from mental illness in the abstract. It is, does whatever mental impairment the person has inhibit to such a degree the conduct of the trial? That is incompetence. Incompetence is a trial, not some sort of generalized form of incompetency. And I will understand the argument that the same set of mental disabilities might have made someone competent for a certain part of the trial but incompetent for another. And what seems to be the basic argument as to the penalty phase here was that Mr. Stanley, when they were making the argument that he was incompetent at the penalty phase, all of a sudden Mr. Stanley is being so obdurate with respect to this evidence about his psychological state, about Dr. Apsarod's tapes and so on, that he is now really incompetent in the sense of assisting us because the only evidence we possibly can use to save his life, he's not letting it come in. And if you look back earlier at the guilt phase, well, that evidence wasn't so critical. Are you with me so far? Yes, Your Honor. Okay. So the question then in part is, is the defendant so unreasonable in the litigation choices he is forcing upon his lawyers that he's incompetent? Well, now let's go back to the guilt phase. It does seem to me that Mr. Stanley's choice to insist on an I didn't do it defense was idiotic. This is to say the evidence of guilt was absolutely overwhelming. And it would have been a much better defense at the guilt phase for him to have kept his seat, not taken the stand, and we then had evidence of some form of diminished capacity and so on. So this is a long way to set up the question. Why wasn't it back at the guilt phase, his insistence upon putting on what view, I think at the time had to be viewed as a hopeless, hopeless defense, the evidence of incompetence? Well, Your Honor, I think that both defense attorneys, one defense attorney certainly agreed with you. Mr. Peterson testified at the evidential hearing that when he reviewed the reports, he realized they were going to go to the penalty phase. There was no viable defense. Mr. Neal at the competency hearing in the penalty phase testified that he agreed with Mr. Stanley that Mr. Stanley was not the killer. Now, I don't know if Mr. Neal said that because he did not want to upset Mr. Stanley, but he testified under oath that his belief was that Mr. Stanley was not the killer. That's why they went with it. They did not have a good choice, Your Honor. Now, Mr. Stanley at the penalty phase told Mr. Peterson and Mr. Neal, well, you can play the tape for him, but it's not going to make any difference. They're still going to vote for the death. Mr. Stanley was right. Now, I think the court raises a point that I brought up during the evidential hearing with Dr. Woods. The fact that Mr. Stanley does not want to do this, is that irrational, or is he allowed to have his dignity and not have it? When Senator McCain was being held in Hanoi, and he had the opportunity to be released, all he had to do because of his father's position, they were willing to release him. He said, no, I'm not going to do that. Was that an irrational decision by Senator McCain, that he would stay in custody even though he could be released? Some people have values that are different than ours. The fact that Mr. Stanley valued here that he did not want to be labeled a killer, and he did not want to be labeled with a mental disease because it would make him look like a killer, because maybe of his childhood abuse from the hands of his father, or because he had a son and he did not want his son to think of him differently. Mr. Stanley had that belief. Whether that is an irrational belief, or whether that is mental illness that prevented his attorneys from acting, I think that is the question. I take the position that it's just Mr. Stanley's belief. He is not incompetent because he has this belief that some things are more important whether I get executed or not. I think when I close that to Dr. Woods, Dr. Woods says, well, that's for somebody else. That's not for a mental health expert. That's for a theologian or philosophy side. Mr. Stanley has consistently said, I don't want to be labeled. The defense attorneys get upset because this is all we've got, and he won't let us use it. But in the end, Mr. Stanley did let them use it. The reason Mr. Neal and Mr. Peterson went to the court, and regarding back to Ms. Holman's question here regarding the record, twice the judge said, I don't think he's, I looked at him once when he was jailed. I said, I was Zoomed in a day. He's conversing with his attorneys. He's writing things down. He seems fine. Previously to that, when the attorneys had said, well, we had a doubt. I said, well, I've looked at him in trial. And then twice in the penalty phase, after the findings of guilt, he denied the defense motion to have a competency hearing. So we have the judge firmly on the record at least four times saying, no, there's no incompetency hearing. Now, I don't know if I fully addressed the court's issue on that, but going back to the guilt phase, there was no deficient performance. What they did, they hired an expert. They relied on the expert to tell them, Mr. Stanley. So even if I think I'm spelling a word wrong, I go look it up in the dictionary. Well, I thought it was wrong, but when I looked it up in the dictionary, I don't have a doubt anymore. So these attorneys thought, well, maybe something's wrong with Mr. Stanley. They consult with doctor after us. They don't have a doubt. Again, the incompetency in this sense has a very specialized meaning. It's incompetent to assist in the defense. And there's a fair amount of this that's really not for the psychiatrist or the mental health professional to do. It's for the lawyer who's trying to put on the defense. And the lawyer is – I mean, both the psychiatrist and the lawyer have relevant information. But part of the relevant information really is in the hands of a lawyer. Exactly. This court in Williams, I believe, said the best evidence is what the attorney thinks about the man's incompetency. And when Mr. Peterson asked during the evidentiary hearing, was there anything Mr. Stanley could have done to assist you during the guilt phase? No, there was nothing he could have done. He said maybe he could have stayed off the stand instead of putting on that really lame defense. Yeah, after giving a previous lame defense to the police. But the lame defense was coming in anyway. He had given a statement to the officers that he admitted on the stand was a lie. So the benefit of – I agree, Your Honor, it's a lame defense. Did that prejudice deteriorate so much that they inflicted the penalty later on? I don't know. I think the fact that he killed multiple women is why he got the death penalty. But it may have been. There are different track years. Then you go to Strickland. Strickland doesn't say you have to do it one way. Strickland says it has to be reasonable. Also, Mr. Stanley has a right. He has a right to testify. And this is what Mr. Stanley wanted to do. And sometimes it works. I mean, as Mr. Peterson was saying, you never give up. He tries things. I don't think the jury was going to buy this. The physical evidence, the circumstantial evidence against Mr. Stanley was overwhelming. It is – Mr. Stanley put his attorneys in that position long before he got to trial, long before he got arrested. When he killed his wife, when he left all that evidence out there, when he gave the lousy statement, when he had been previously convicted of murder, these attorneys did not have a lot of guilt, Your Honor. And I don't think we can raise the incompetencies, meaning that I disagree with my attorney on tactics, because then you're taking all the rights away from the defendant. Yeah. No, that's a tricky one, because we do know that competent defendants, competent in the sense of incompetence, as you say, in trial, often insist on defenses against the better judgment of their attorneys. Can we come back to the part of the argument that Mr. Schlesinger was making at the beginning, and that is to say whether it was permissible for Judge Dunrell to send his case to the state court for determination as to whether it is feasible to have a retrospective competency hearing with respect to penalty phase? Now, I think I understand correctly that you didn't want that either. Well, there have been other attorneys on this case who have taken different positions. I guess I say you, the state. The state. And they've pointed out there has been inconsistencies. I think the reason to keep it there now is because that's where it is. And part of capital litigation is that there is a clock running. Mr. Stanley is 65 now. If he has 10 or 15 more years, we would like a resolution. And I'm here to carry out the orders of the Superior Court to execute Mr. Stanley. And eventually, if this case goes on long enough, Mr. Stanley dies in actual pauses. I'm not playing a game with Mr. Stanley's life, but that's a factor of consideration. We would like to expedite litigation. We were in the district court. Let's litigate it now. Same way as they were saying, well, this court shouldn't be hearing this appeal. It shouldn't be split up. We're here now. Let's litigate these issues now. So that's part of the reasoning. The state court is not going to be on dead time because if this court affirms that it's a guilt case, and then we need to do it and the retrospective is found to be true, someone has to do a jury trial. Even if Judge Damrell and Magistrate Judge Hollow found that it was feasible to do retrospective copies, the state court could still overrule that. The state court can say, well, the federal court said they could do it, but that wouldn't be binding on them. He said, well, it's just as impossible. Mr. Witt? Yes, Your Honor. Maybe this is getting back to your point that your office has taken somewhat inconsistent positions at various times in the litigation. But what troubles me is that Judge Damrell issued his order on March 17, 2008, and no stay was entered of the efficacy of that order, and yet you informed us when we issued the supplemental briefing order that no proceedings are even scheduled in Butte County until October of 2010. Why the delay? If you're so insistent on making sure that Mr. Stanley gets his appointment with the executioner, why is it taking so long to resolve this matter in the state court? Your Honor, it's being handled now by the Lake County District Attorney, Mr. Hopkins. We are not directly involved with that. We don't control. He is an independent elected official. He controls everything. So you don't talk to him at all about when he's going to schedule a hearing? Your Honor, when the order came down, there was initial conversation, but I'm not the elected district attorney from Lake County. I have limited powers. It could have been handled a different way, yes. So you have no explanation whatsoever for the almost 18-month delay? I can guess. I can speculate. Actually, it's more than that. It's more than two years. Yes. The first conference hearing took three months. When we didn't appeal the order and it went sent back down, I think the expectation was it should take six months to a year. The fact that it's taking this long, it's probably going to take another year. Even if the retrospective comp sees it's granted, that it's feasible, they're probably not going to have a trial in the spring. Whenever they appointed the new district defense attorney, he had to get up to speed, and the court has looked at the record. You have to give him time to evaluate that. If he puts a priority on that, it'll take him four to six months to do that, and he'll be thoroughly. If he has the assistance of a federal defender and he says, we can cut your work in half, here's all you need to look at, he could do it in two months. That could have been done. Mr. Hopkins, if he had said, this is my priority, I've got a case, I've got a case, but I'm going to sign a death penalty if you have it, it could have been in four to six months. If the court said, this is a death penalty case, it's a priority, we're going to schedule these changes, we're going to keep the trains running on time, it could have been done. It wasn't. I think other things got in the way. They said, well, we'll handle our other cases, then we'll get up to speed. We're going to worry about trying to get a change of venue back to Lake County. Also, Mr. Stanley himself is throwing in some things. He's got some medical issues. He does not want to be transported, so they're counting him by going to San Quentin. He made a motion in that court to have Mr. Levitt come in to represent him on that court with the understanding that perhaps he will waive it. Mr. Stanley can't waive that competency hearing, and he will not be able to waive the direct appeal to the Supreme Court if, in fact, the competency is found. If he's found to be competent, he's healthy-faced, and in fact. So, yes, there have been delays. They're not rushing the judgment. It is not good. If the court now does that, we're still two years down the road. Send it back to the district court for some findings. And the district court has not had a special hearing and has taken evidence. It could. The district court can make a finding. But it's in no better position than the state court. The difference would be in a habeas proceeding, Mr. Stanley doesn't have the right to be present. In the state court, part of the trial, he has the right to be present. And that may be of some significance in this case where Mr. Stanley says, my attorneys aren't giving me pleadings. I don't know what's going on. Maybe it's better that Mr. Stanley be present during this phase. That's not something that came into our actions when we were thinking about it, but maybe that would be a reason why the state court would be a better forum. The state court can decide the federal issues. Also, the fact is that there is a first point. The second point is this is the way habeas is usually conducted. The state court usually has first chance to decide what happens. The federal court gets the last word and does review. I don't see a reason that we should go to the unnatural way of letting the federal court do it, then go to the state court, then bring it back to the federal court for review. In your view, what is the result if the state court, if we leave it in the state court and the state court makes the determination that it is not possible to have a retrospective competency determination, then what happens? Well, Your Honor, then we have, depending on what happens in this court on the guilt phase. I guess I should assume for the purpose of this hypothetical, either you don't know because we haven't decided yet or that we will in your favor. Your Honor, if we're not able to have, to reinstate a competency finding, we have an invalid penalty phase. Correct. So then what happens? Well, then if this court affirms the guilt phase, then it will be remanded back to the state court, and then the state court, the parties involved, which would be the district attorney of Lake County, would make a decision, do I want to attempt to get a valid penalty phase? They could retry them on the penalty phase and make that decision. And at that point, if the DA decides that he wants to go forward with the penalty phase, it sounds as though we're pretty likely going to have a contemporaneous competency hearing. Well, then the attorneys have to say, I think it doesn't carry over. The fact he was incompetent from 27 years ago doesn't carry over, I don't think. So we've got to make a competency determination right now. If his attorney expresses a doubt or if the trial court says, or maybe they just say, because of the history here, I'm just going to order a competency hearing right away. I don't know if that's possible. Because he has speeding trial rights as well, he has attorney-client privilege as well, he may not want to be examined for strategic reasons they might want. But one form or another, if there is a new penalty phase hearing in state court, he has to be competent, and we'll figure out, the state court's got to figure out how it's going to figure that out. Always, Your Honor. California law is consistent in the Supreme Court decisions because we have to have a competent defendant. But I don't know if I've adequately addressed the court's concern whether, in effect, there is sufficient evidence to have another competence hearing 27 years later. I understand it's a long period of time, but, again, we have all the testimonies. Your argument is we already have the record, right, from the month-long trial? Yes. Yes, and we have the guard's testimony, we have the attorney's testimony. Dr. Axelrod is still alive. Dr. Axelrod spent a considerable amount of time with him. Mr. Stanley is still alive. Mr. Stanley can testify. They can look at his 300 pages of testimony. But the competency hearing that is scheduled for October will be based on the record from 1983. We're not having people come in and trying to testify retrospectively about what they thought in 1983. The jury would presumably consider the same evidence that the jury had in 1983. Well, the first one will be whether retrospective is possible, and I think experts will be coming in to testify whether retrospective is possible. They won't be coming in to testify that Mr. Stanley was competent back then. They're just going to testify regarding whether the hearing itself is possible. And that's what's going to happen in October? My understanding is Mr. Hopkins is calling witnesses for that, Your Honor, although the court could just look at the record, too. Again, I'm not directly involved. Presumably you could simply read the transcript to the jury. Yes, Your Honor. And show them the videotapes. Exactly, Your Honor. And have whatever other evidence that could complement that. But I don't see anything in Judge Damrell's order that tells the Superior Court, if it decides that a competency hearing is possible, what goes on in that hearing. I think it's within the scope of Judge Damrell's order that the Superior Court has a fair amount of discretion. And it could decide to limit itself to the transcript of the prior hearing. It could decide to allow more evidence in. Absolutely, Your Honor. And then I'm sure if the defense has objections, they can make them to the trial court. And if they have continued objections, they can make them to the California Supreme Court. And if federal rights were impinged, they would then make their argument to the Haitian court. Okay. But in your view, now that Judge Damrell has sent the competency question to the state court, both as to is it possible to make the retrospective determination, and if so, what is that determination, now that it's there, you're content to have it stay there and go forward in that form? Yes, Your Honor. I believe that would be the most expeditious. If it had gone the other way at the beginning, I think we would have said, fine. We're not here to fight the court's orders. The court ordered us to go back in 30 days and comply with that. I think that was our option. What happened in those 30 days? I heard you say nothing. Well, they have fought more than two years and nothing has happened. Do I misunderstand your answer? That's what I heard. Yes, Your Honor. Again, I'm in a position where I – Yes, Your Honor. What? I misunderstood your answer or I understood exactly what – Well, they did something. It wasn't nothing. They appointed attorneys. They set hearings. They held cases. They opened a file. Yeah. Okay. And the court is familiar with trials. If you don't make it a priority, it becomes everybody else's step and choice. And I have disappointment with that myself, Your Honor. I think that the wisdom of Magistrate Holloway's decision and Judge Dammel's order, it gave both parties an opportunity. Whether the parties abused that opportunity is another question. But when it goes to the correctness of Magistrate Holloway, he realized that we would want to have tried to reinstate a bail accounting thing. He said time was of the essence. Here's your opportunity. Mr. Stanley, you want to be released from custody. You want to get – the only way that's going to happen, if the guilt phase is reversed, here's your opportunity. You go to the Ninth Circuit prosecution. You go to the state court. It was almost like a solemn decision. You made both parties – gave them what they wanted. Now both parties seem unhappy with that. Well, that's not Magistrate Holloway's decision. And I'm not unhappy with his decision. We want to expedite this hearing. I don't think the court will delay this case. Sometimes things happen. It will be 30 years next month from the homicide. These are complicated issues. We're taking our time. California is not rushing the judgment on this. We want to ensure that Mr. Stanley has – That we can all agree on. We want to ensure that Mr. Stanley has his opportunity. Could it have been done more quickly? Yes. If the court is asking my opinion, if I had been the judge, I would appoint Mr. Schlesinger to rep Mr. Stanley. I would ask Mr. Hopkins, I would say, Mr. Witt, you want to take it over? We were prepared. We have been dealing with this case for six to nine months. The expert would take 60 days to get everybody subpoenaed. We could have the hearing sent to the Supreme Court. We would be there now in front of Magistrate Holloway. This court can make its decision in a timely manner. That's what could have happened. It didn't happen. Whether we can now undo all that, no. If the court has other questions or a further address, thank you, Your Honor. Thank you. Mr. Schlesinger? I won't put a time limit on it. You say what you need to say. Thank you, Your Honor. I took some notes, and I'll try to make sense of them and address some of the questions that came up. Judge Tallman, you've asked a lot of questions about why is it taking so long. My second supplemental brief went through the, I think it's 11 hearings and described it. Thank you, by the way. That was very helpful. It was very responsive to my question. Well, thank you, Your Honor. I didn't go into a lot of detail about the hearings, both because of time limits and it's, I'm sorry, page limits, and it seemed a little excessive. Let me put it this way, Mr. Schlesinger. I learned more in answer to my question from you than I did from Mr. Witt's brief, and that's all I will say on that subject. And I could provide more details, but I think you have the gist of it. A lot of why the delay is one day Mr. Stanley wants Mr. Olive, the next day he doesn't want Mr. Olive. You have not been appointed to assist in that. I have not, Your Honor. The amount of red tape to have a federal defender appear in state court is enormous. But I've been at a few of the hearings. They're not blind to the time considerations there, and I could provide transcripts if you'd like, but my sense is you just sort of want to know what's going on. I wanted to get a sense of what was happening outside of our court. Judge Howell there in Butte County said to both parties, we don't think, I don't think Mr. Stanley's ever going to get executed. There's a lot more litigation here. Why don't you just settle the case? And he said, if there's anything I can do to help you settle it, I'll do it. But it's not unprecedented for there to be this kind of delay. This is the longest one I've had. I'm sorry. In following a remand, the Odole case was remanded by this court in 2001. They still have not determined his competency. And interestingly, Judge Damrell said one of the reasons we have to certify a partial judgment here is it's been a long, long time, and even a couple more months may be critical. And now we're two years plus, way beyond a couple more months. And as Mr. Witt pointed out, what's scheduled to happen at the end of this year, if it does happen, it's been continued many times before, is a feasibility hearing, not the trial. That I understand, whether or not it can even be done. Now, one of the other things that Mr. Witt talked about and was questioned about was Mr. Stanley's desire not to be labeled mentally ill. And Mr. Witt talks about the right to dignity. I have a hard time thinking that anybody reading anything Mr. Stanley routinely files in any court comes away thinking this is a dignified person. Well, but he's not the first client who has insisted that he didn't do it. No, absolutely, Your Honor. And in that respect, the fact that he will not own up to it and hasn't for 27 years does not necessarily indicate that he's incompetent. No, that's true. But the supposed utter refusal to be found mentally ill, the prior case he had, the 1975 conviction, was successfully reduced from first degree murder to second degree on a diminished capacity theory. So this is not somebody who is adamantly opposed in a rational way, like Senator McCain, to carry out a certain course of action. And, again, that desire not to be labeled mentally ill is part of the reason, a legitimate tactical reason for not bringing the motion. Hove Kyler, in other cases cited in our brief, says that's not a legitimate tactical decision, as do the ABA standards. You can't turn over to a potentially mentally ill client the decision whether they are going to be tried while incompetent or not. And there's a technical term in mental illness. It's called anosognosia, that people who are mentally ill often have no awareness of the mental illness, and that's the basis for the kind of cliche of the person in the mental hospital, I'm not mentally ill. There were some questions initially about the record of the trial and the contemporaneous assessment made then, what can a jury do with that? I don't mean to repeat myself, and I'll try to address solely the new portion of that. There was the suggestion that maybe that could just be read to the new jury. Part of the problem is Mr. Neal and Mr. Peterson defended that case in the wrong manner with the wrong question in mind, so the new jury isn't going to have the information it needs by hearing that record, not to mention the fact that I . . . Well, that's going to be up to the Superior Court judge to . . . I mean, that's not an argument to us. And I can't imagine there being enough coffee in the world to keep the jurors awake while a month-long transcript is read to them. You should see some of the civil trial transcripts. Touche. And unless there are other questions, that kind of covers my notes. Okay. Thank you. Thank both sides for their argument. These are, of course, very difficult cases, and we appreciate your hard work on both sides. Thank you. The case of Stanley v. Ayers is now submitted for decision in its current form, and we're now in adjournment.
judges: Fletcher W. , Tallman, Bybee